JAMES STANLEY FRAZER ET AL. *v.* JOHN R. ENNIS ET AL.

[No. 6, January Term, 1933.]

352

*Decided March 20th, 1933.*

The cause was argued before BOND, C. J., PATTISON, URNER, OFFUTT, DIGGES, and PARKE, JJ.

*William J. Bratton,* for the appellants.

*Joshua Clayton* and *G. Reynolds Ash,* for the appellees.

URNER, J., delivered the opinion of the Court.

In December, 1930, the plaintiffs agreed orally with the defendants to drill an artesian well on the farm owned by the latter, as tenants by the entireties, in Cecil County. The stipulated price for the work was three dollars per foot. The drilling began in January, 1931. A sufficient supply of water was found at a depth of 110 feet, but it contained a very fine sand which could not be eliminated by the use of a strainer in the pipe. When an attempt was made to sink the well to a deeper level, the casing was broken and the work at that point had to be abandoned. A second well having been drilled to a depth of 370 feet, and the water obtained from it being unusable because of the presence of sand, the defendants stopped the work until they could have a conference with the plaintiffs, after which the drilling was continued until the well was 420 feet deep. The water produced being still objectionable because of the fine sand which it contained, the work

on that well was suspended. A third well was then drilled at a lower point remote from the others, under an agreement that the work should stop at a depth of 40 feet, and that the price should be two dollars per foot. The same water condition having been found in that well, the work there was discontinued. An unsuccessful effort was then made to improve the spring near which the third well was located. After the termination of that work, the plaintiffs, at the request of the defendants, tried by pumping to clear up the water in the second well. That operation continued at intervals, for several weeks, but ended in recognized failure, on May 14th, 1931. The drilling work had stopped on the 25th of the previous month. A payment of $500 on account of the work was made by the defendants to the plaintiffs on May 9th, 1931.

There is no claim by the plaintiffs for the drilling of the first well or for the last 50 feet of the second, but they have sued for the agreed price of three dollars per foot for 370 feet of drilling in that well, for 40 feet in the third at two dollars per foot, for the work on the spring, and the subsequent pumping at the second well, for which it was agreed that they should be paid "on a time, labor and material basis," and for two independent items which are not disputed, the total of the claim in suit being $1,431.60, less a credit of the $500 paid on account of the well project. A verdict in favor of the plaintiffs was rendered for the balance thus claimed.

Of the six exceptions taken at the trial only five are pressed on appeal. Four of these relate to the admissibility of testimony, and one to the action of the court on the prayers.

The defendant who made the partial payment to the plaintiffs was asked a series of questions in regard to the circumstances under which the payment occurred. It was made with a check drawn to the paying defendant's order by a corporation which he controlled, the check being indorsed by him to the plaintiffs' order with a notation that it was "part payment on artesian well." The defense which he was making for himself and his wife as codefendant was that the agreement

by the plaintiffs for the well-drilling work included a guaranty "to clear up, develop and make usable any water that might be found or located" in the course of that operation. In the effort to neutralize the significance of a substantial payment on account at a time when the drilling had been finished, but the water had not been made usable, the defendant who made the payment was asked the questions to which the first four exceptions refer. It appeared from the testimony that he indorsed the check as prepared by Mr. Dougherty, the treasurer of the corporate drawer, who then transmitted the check to the plaintiffs. The argument in support of the exceptions now under consideration is that the adverse rulings prevented the witness from testifying that an unqualified delivery of the check was not authorized. But the record shows that such an opportunity was afforded when the inquiries were repeated. The witness was allowed to be asked whether he ever authorized the delivery of the check, and under what circumstances or for what reason he indorsed it, and what were his instructions as to when it was to be delivered. In reply to the last question he stated that he could not recall having given any instructions at that time. The answers to the other permitted questions on the subject were consistent with that statement. There was consequently no apparent injury to the defendants resulting from the rulings on the evidence exceptions.

In granting the first prayer of the plaintiffs the court instructed the jury that, "if they find from the evidence that the defendants agreed to pay the plaintiffs three dollars per foot for drilling an artesian well, and that in digging said well a sufficient supply of water was found at a depth of 110 feet, but in the judgment of the plaintiff the water could not be cleared of sand; and that at the suggestion of plaintiffs the defendants acquiesced in drilling deeper with the hope of finding better water at a greater depth; and that by reason of the breaking of the casing, it became necessary to start a new well, and that when a depth of 330 or 370 feet was reached there was a consultation between the plaintiffs and defendant, J. Stanley Frazer, and it was agreed that defendants should pay for said depth of 330 or 370 feet at three

dollars per foot but that any further depth would be at the risk of the plaintiffs; and that on the failure to find satisfactory water at the depth of 417 or 420 feet, said well was abandoned with the acquiescence of the defendants and that the defendants agreed that the plaintiffs should drill another well to the extent of 40 feet at two dollars per foot, and further find from the evidence that the defendants have paid on account of said drilling the sum of $500.00, then the plaintiffs are entitled to recover such balances as the jury may find remained unpaid at the rates agreed upon as aforesaid; provided the jury shall further find that the plaintiffs were ordinarily competent to do the work which they undertook to do, and used ordinary care and skill and judgment in the execution of said work; and if the jury further finds from the evidence that the plaintiffs did further work for the defendants on their farm at their request not included in the above, then the plaintiffs are entitled to recover such additional amounts as the jury may find to be due for said additional work with interest thereon in their discretion."

It is argued that the quoted prayer improperly ignored the question in dispute as to whether the plaintiffs guaranteed to clear up and render usable any water found in the well which they contracted to drill, and that the prayer thus involved an objectionable segregation of facts. The defense theory as to the contract was embodied in a prayer granted at the request of the defendants with some modification. It was based upon the hypothesis of an agreement differing materially from the one which the plaintiffs alleged and which their evidence tended to prove. The two instructions presented the important distinction between an unqualified and a conditional promise to pay for a service to be performed. The jury could not find for the plaintiffs under the instruction granted at their instance without a definite determination that the agreement by the defendants to pay for the specified drilling at a designated rate was unconditional. At the same time the jury were affirmatively directed, by an instruction obtained by the defendants, to consider and pass upon the opposing theory as to the terms of the contract. The omission of the

plaintiffs' prayer to negative the existence of an agreement essentially different from that on which they relied for recovery does not, in our opinion, bring the prayer within the prohibition of the rule which the defendants have invoked.

Another prayer granted for the plaintiffs instructed the jury that: "If they find from the evidence that the contract for the well drilling between the plaintiffs and the defendants terminated in the month of April, 1931, and that the defendants through a check in the sum of five hundred dollars ($500.00), dated May 6th, 1931, drawn to the order of the defendant, J. S. Frazer, and endorsed over by him under a statement on the back thereof that the said check was a part or partial payment on account of artesian well, which said check was delivered to the plaintiffs on May 9th, 1931, if they so find from the evidence, and if they shall further find from the evidence that the defendant J. S. Frazer, told the plaintiff, William T. Ennis, that said check was waiting for him at the Trust Company in Newark, Delaware, after the termination of said drilling as aforesaid, then the jury must treat the delivery of said check to the plaintiffs as a part payment on account of said well drilling contract." There was evidence supporting this prayer, and none tending to qualify the effect or significance of the payment. The objection to the prayer was properly overruled.

The remaining granted prayer of the plaintiffs was to the effect that the defendants had offered no legally sufficient evidence that the failure of the plaintiffs to clear up the water in the well drilled by them had resulted in any consequential damages which the jury could measure. The lack of evidence on the subject justified that instruction. For the same reason the defendants were limited, by a modification of their prayer based upon their plea of set-off, to recovery of the $500 payment, if the jury should accept their theory as to the qualified and conditional nature of the agreement.

Reference has already been made to a granted prayer of the defendants submitting their version of the contract, and to the fact that the prayer was modified by the court. The change consisted in the insertion of a clause presenting the

question whether the conditional terms asserted by the defendants had been subsequently modified or waived by their conduct before the work terminated. The instruction was thus made consistent with one of the plaintiff's granted prayers in regard to the question of a new agreement between the parties while the work was in progress. There was evidence that the parties entered into a later agreement which contemplated the further prosecution of the work and implied an understanding that the defendants were to be paid unconditionally for the drilling already accomplished. In view of that evidence we think the modification of the defendants' prayer was proper.

The case was fairly tried and submitted to the jury, and we have found no reason to remand it for another trial.

*Judgment affirmed, with costs.*